# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TELCO SUPPLY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-13–207-RAW |
| | ) |
| REMEE PRODUCTS CORPORATION., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is the motion for summary judgment of defendant Remee Products Corporation ("Remee"). This lawsuit began with a complaint (#2) on behalf of plaintiff Indian Nation Fiber Optic, Inc., ("INFO") against defendant Remee. The lawsuit alleged that starting in August 2011, INFO purchased fiber optic cables manufactured by Remee, and that deliveries of those cables began in January 2012 and continued throughout 2012. It further alleged that the cables proved not to be merchantable or fit for use, and claims for breach of implied warranty were brought.

Defendant filed a motion to dismiss the claim for breach of warranty of fitness (#9). In plaintiff's response (#14), plaintiff agreed to dismiss that claim without prejudice. Thus, plaintiff said, it "will pursue only its 'merchantability' claim." The parties filed a stipulation (#15) to that effect. Subsequently, plaintiff INFO filed an unopposed motion (#25) to substitute Telco Supply Company ("Telco") as the named plaintiff. The court granted the motion by order #27.

Remee, a New York corporation, sold fiber optic cables to Pittsburgh Pipe & Supply Co. ("PPSC"). Remee manufactured the cables in New York and tendered them to plaintiff Telco at Telco's warehouse in Sulphur, Oklahoma. Remee sent invoices to PPSC. Remee received payments for its invoices from PPSC in New York. Plaintiff, meanwhile, submitted purchase orders to PPSC

for the cables that PPSC ultimately obtained from Remee. After these transactions, plaintiff sought to install some of the cables and found them – in plaintiff's view -- to be defective and not merchantable.

The standard for a summary judgment motion is set forth in Rule 56(a) F.R.Cv.P. The court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Doe v. City of Albuquerque*, 667 F.3d 1111, 1123 (10th Cir.2012).

Defendant makes eight arguments in its motion, which shall be addressed in turn. First, defendant contends that New York law applies to this case and that therefore (because New York law requires privity of contract in order to recover for breach of implied warranty) plaintiff's claim fails due to lack of privity. Oklahoma law, by contrast, does not require privity of contract in order to maintain such a warranty claim. *See Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc.,* 604 P.2d 849, 852 (Okla.1979).

Because subject matter jurisdiction in this case is premised upon diversity of citizenship, the conflict of law rules of Oklahoma, the forum state, apply. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 497 (1941). In an action for breach of warranty in a sale of goods under Article 2 of the UCC, Oklahoma applies the "most significant relationship" test. *See Ysbrand v. Daimlerchrysler Corp.,* 81 P.3d 618, 625 (Okla.2003). *See also* 12A O.S. §1-301.

Remee contends that New York is the state with the "most significant relationship" to the matter at issue. Pertinent factors are (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *See Restatement (Second) of Conflicts of Laws,* §188(2). *See also Interfab, Inc. v. Valiant Industrier AS,*

188 F.3d 518, *4 (10th Cir.1999). "[I]n a contract for the sale of goods the most significant contact is the place of delivery unless another state has a more significant relationship." *Collins Radio Co. v. Bell,* 623 P.2d 1039, 1047 (Okla.Civ.App.1980).[1] Here, the place of delivery was Sulphur, Oklahoma.

Remee relies on *Ysbrand,* which involved a choice of law issue in connection with certification of a class action by buyers nationwide against a car manufacturer for faulty air bags in minivans. As here, the theory was breach of the implied warranty of merchantability. As had the court in *Collins*, the court in *Ysbrand* found an exception to the preference for the "place of delivery." The Oklahoma Supreme Court concluded that the law of Michigan should apply because that is where the manufacturer was headquartered. The court noted that UCC warranties are not negotiated by each buyer, and thus "the relative interest of each buyer's home state in applying its version of the UCC is more or less equal." 81 P.3d at 625. By contrast, Michigan's interest in having its regulatory scheme applied to the conduct of a Michigan manufacturer was most significant. Michigan was the only state where conduct relevant to all class members occurred. *Id.* at 626.

This court finds *Ysbrand* distinguishable. As plaintiff notes in response, in a class action lawsuit, giving emphasis to the place of delivery could result in application of the law of each plaintiff's state. Thus, the court in *Ysbrand* chose the one state where conduct common to the class

---

[1]As the language indicates, even the *Collins* decision itself does not establish a "delivery-state rule." Although delivery occurred in Texas, the court applied Oklahoma law because it determined that the contract contemplated a continuing relationship between the parties in Oklahoma. 623 P.2d at 1048. No indication of a continuing relationship between these parties in New York appears in the present record. *Collins* is not "precedent" pursuant to 20 O.S. §30.5 but stands as persuasive authority.

3

took place. Remee disagrees, stating that *Ysbrand* actually changed the analysis in warranty claims made against remote manufacturers, finding the manufacturer's home state with the paramount interest. This court is not persuaded, for one thing because such ruling would be appear to be contrary to §191 of the *Restatement*, as cited by the court in *Collins*. Finally, the court rejects Remee's argument in its reply (#111 at 4) (based upon a sales document between it and PPSC) that Remee's delivery actually took place in New York. Oklahoma law applies and the claim will not be dismissed for lack of privity.

Next, Remee argues that plaintiff purchased the cables free of any warranty of merchantability. This issue produces the unusual conclusion that the court disagrees with both parties. Remee notes that it has a Limited Product Warranty on its website which purports to disclaim any implied warranty of merchantability in the sale of its product. Oklahoma law provides for such exclusions, provided they are conspicuous. *See* 12A O.S. §2-316(2). Although Telco made its purchase from PPSC, Remee argues that the exclusion of implied warranty should extend to Telco. Remee acknowledges a Tenth Circuit decision to the contrary, *Patty Precision Prods. Co. v. Brown & Shape Mfg. Co.,* 846 F.2d 1247, 1252-54 (10th Cir.1988). Remee argues that subsequent changes to 12A O.S. §2-318 would lead the Tenth Circuit to a different result today. This court is not necessarily persuaded on the merits of this argument, and in any event this court is bound to follow existing Tenth Circuit precedent.[2]

---

[2]In the notice (#153) withdrawing its motion for partial summary judgment (which sought to raise a claim for breach of <u>express</u> warranty, i.e., the Limited Product Warranty on Remee's website), Telco asserted that if the court did not rule in its favor regarding *Patty Precision*, Telco would raise an argument under 12A O.S. §2-207, the infamous "battle of the forms" provision. Having agreed with Telco regarding *Patty Precision*, the court assumes the alternative argument is moot.

For Telco's part, it contends that the Limited Product Warranty on Remee's website does not just disclaim implied warranties, it substitutes the limited remedy of "repair, replace or refund". Telco argues that (even if this writing had been communicated directly to Telco) the "warranty, as limited, failed of its essential purpose." The asserted failure is that Remee failed to "repair or replace" the cable and then refused to "refund." Citing *Osburn v. Bendix Home Systems, Inc.,* 613 P.2d 445 (Okla.1980), Telco argues that when such a failure of essential purpose takes place, a plaintiff is entitled to all remedies available under the UCC. *See* 12A O.S. §2-719(2). The court held that when a manufacturer limits its obligation to repair and replacement of defective parts, and repeatedly fails to correct the defect within a reasonable time, it is liable for the breach of that promise as a breach of warranty. 613 P.2d at 450 n.13. The limitation of remedy is deemed to have failed of its essential purpose *eo instante. Id.* at 449-50.

In response, Remee corrects Telco that the UCC does not contemplate a <u>warranty</u> failing of its essential purpose, but rather a limited remedy. Remee cites *Precision Aggregate Products, LLC v. CMI Terex Corp.,* 2007 WL 3232187, *5 (W.D.Okla.2007): "[*Osburn*] stands for the proposition that a buyer is relieved of a contract-imposed limitation on *remedies* if that limited remedy fails of its essential purpose. The implied warranties of merchantability and fitness for a particular purpose are warranties – that is, promises – not remedies under the Code. The implied warranties were properly disclaimed under the Code and cannot be revived based on the alleged failure of the limited remedy." (footnote and citation omitted)(emphasis in original). This is correct, but inapposite to the facts of this case.

Most of the parties' briefing on this issue appears to the court beside the point. The present record indicates Telco was not provided with the Limited Product Warranty on the website.

5

Therefore, Remee may not rely upon any exclusion of warranty, and Telco may not rely on any limited remedy, whether failing of its essential purpose or not.

In sum, Telco may pursue a claim for breach of implied warranty of merchantability against Remee,[3] but 12A O.S. §2-719(2) is inapplicable, and Telco is limited to the remedies appropriate to such a claim.[4] For example, Telco appears to contemplate that it may still effectively reject the goods or rightfully revoke its acceptance of them. (#95 at19). The court disagrees. As Remee notes, (#111 at 8 n.11), a predicate to bringing an action for breach of warranty is acceptance of the goods. *See Nelson v. Davis Modern Mach.,* 715 P.2d 1052, 1055 (Mont.1986). *See also Kelly v. Olinger Travel Homes, Inc.,* 117 P.3d 282, 288 (Or.Ct.App.2005)("A buyer must accept goods to recover for breach of warranty. Not only must a buyer accept the goods but, because damages for breach of warranty are designed to compensate for the diminished value of retained goods, the buyer also must not revoke acceptance. As comment 1 to UCC 2-714 explains, "This section deals with the remedies available to the buyer after the goods have been accepted *and the time for revocation of acceptance has gone by*." . . . Thus, damages for breach of warranty are not available to buyers who have revoked acceptance." (emphasis in original). Indeed, the buyer's damages are typically measured by the "difference at the time and place of <u>acceptance</u> between the value of the goods <u>accepted</u> and the value they would have had if they had been as warranted. . . ." 12A O.S. §2-714(2) (emphasis

---

[3]Under 12A O.S. §2-314, a warranty of merchantability is implied in every contract for the sale of goods.

[4]As a subsidiary argument, Remee contends that the notice that Telco was buying from PPSC "as is" serves to bar any claim by Telco against Remee. This is not illogical, but Remee cites no authority (let alone Oklahoma authority) on this point. The court in *Harnden v. Ford Motor Co.,* 408 F.Supp.2d 309, 313 (E.D.Mich.2005) suggests an action against the manufacturer is still available to buyer.

added). Section 2-714(3) further provides that, in an appropriate case, a buyer also may recover incidental and consequential damages.

Remee's third argument is that Telco failed to provide adequate and timely notice of breach. Where a tender has been accepted for goods, the buyer must, within a reasonable time after discovery of any breach, notify the seller of the breach or be barred from remedy. *See* 12A O.S. §2-607(3)(a). *See also* 12A O.S. §1-204(2). Under the present record, the court does not find the matter plain enough to rule as a matter of law. Therefore, this is a question for the jury. *See American Fertilizer Specialists, Inc. v. Wood,* 635 P.2d 592, 596 (Okla.1981).

Fourth, Remee contends that Telco seeks speculative damages. Remee asserts that cable splitting was only found as to certain job sites and not others. Remee further asserts that, of the cables still on reels at the warehouse, only a maximum of twelve of those reels showed splitting. Remee contends straightforwardly: "Plaintiff is unable to prove damages that have not occurred." (#63 at 19).

Telco primarily relies upon *Quality Air Services, LLC v. Milwaukee Valve Co.,* 671 F.Supp.2d 36 (D.D.C.2009). There, the court stated it was facing the issue "'whether a plaintiff can make a valid warranty claim for a product *that has not actually failed to perform.*'" (*Id.* at 43)(emphasis in original). The court found that, if supported by expert testimony, "'proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product.'" (*Id.* at 45)(citation omitted).

In reply, Telco cites *Harrison v. Leviton Mfg. Co.,* 2006 WL 2990524 (N.D.Okla.2006), in which the court granted a motion to dismiss plaintiff's claims (one of which was breach of implied

7

warranties) because plaintiff "alleges that Leviton's receptacles are inherently defective and are likely to cause an injury, but he does not affirmatively state that he has suffered an injury." *Id.* at *6.

The court finds neither opinion on point, because in the case at bar it is established that <u>some</u> of the product delivered demonstrated splitting and some of the product delivered did not. Telco's theory of damages appears to be bound up with its theory that it may invoke rejection and revocation. "Despite Telco's clear and absolute right to revoke its acceptance of <u>all</u> Remee brand cable that was purchased, Telco has elected to limit the damages it is seeking to only the larger fiber count (a 'commercial lot') of defective Remee brand cable." (#95 at 26)(emphasis in original). Earlier in the course of this order, the court ruled that Telco may <u>not</u> invoke rejection and revocation while maintaining an action for breach of implied warranty.

Oklahoma law requires damages to be "clearly ascertainable." *See* 23 O.S. §21. The burden is on the buyer to establish any breach. *See* 12A O.S. §2-607(4). The court is dubious that these provisions can be read to permit what presently stands as a breach as to some items to be converted into a breach as to an entire lot. In *Beautiful Home Textiles (USA), Inc., v. Burlington Coat Factory Warehouse Corp.,* 2014 WL 4054240 (S.D.N.Y.2014), the court observed that "[h]ere, Burlington tested only 87 of the approximately 40,000 Delivered Units, originating from numerous production runs. Therefore, there are genuine issues of material fact regarding how many Delivered Units were actually non-conforming, as well as regarding the amount of damages suffered by Burlington and whether they could have been mitigated." *Id.* at *9. This may well be the proper conclusion in this

case as well, but the court will hear the evidence before ruling.[5]

The fifth argument made by Remee is that Telco's knowledge and use of splitting cables bar its claims. Here, Remee relies upon the requirement that consequential damages resulting from the breach include "injury to person or property <u>proximately</u> resulting from any breach of warranty." 12A O.S. §2-715(2)(b) (emphasis added). *See also* Comment 5. Under the factual record, the reasonableness of Telco's conduct after receipt is clearly a jury question, and Remee's motion is denied.

Sixth, Remee argues that the lack of foreseeability (as to Remee itself) and lack of privity bar consequential damages. The court rejects the first argument. Remee is an experienced merchant in this field and there is at least a genuine issue of material fact as to foreseeability. On the second point, one treatise notes "[t]he cases are in conflict as to whether a purchaser can recover consequential economic loss from a remote manufacturer." Barkley Clark & Christopher Smith, <u>The Law of Product Warranties</u>, §10:21 (2013) (footnote omitted).[6] The treatise itself takes the position

---

[5]The court in *Beautiful Home Textiles* referred to genuine issues of material fact because it was addressing Burlington's motion for summary judgment. This court is also denying Remee's motion on this issue pending hearing the evidence at trial. The court is not ruling that Telco must test every reel of cable. The court simply states that Telco must prove each element of its case by the requisite burden of proof. If Telco believes its "inherent defect" theory takes its requested damages out of the realm of speculation, Telco will not be precluded from presentation. Remee, of course, may reurge the argument at the conclusion of plaintiff's case in chief.

At one point, Telco argues that "in order to recover for <u>all</u> of the cable, Telco need only prove two things: 1) a defect; and 2) Substantial certainty that the defect will cause the cable to malfunction during its useful life." (#95 at 26)(emphasis added). This might (or might not) be true in a products liability action. In any event, an action for breach of implied warranty has specific elements. *See, e.g., Brunson v. Louisiana-Pacific Corp.,* 266 F.R.D. 112, 119 (D.S.C.2010).

[6]The Westlaw database for the treatise is PRODWARR.

that "[t]he remote manufacturer should <u>not</u> be exposed to liability for consequential economic loss suffered by the ultimate purchaser." *Id.* (emphasis added). It goes on to explicitly note, however, that "one jurisdiction that appears to have removed the bar for all economic loss including consequential damages, whether the theory is express or implied warranty, is Oklahoma," *id.*, followed by a discussion of case law. Remee's argument will be rejcted on this point as well.

Seventh, Remee contends that Telco has admitted some cables are non-defective. Telco denies such admission. The record does not reflect that summary judgment is appropriate on this point.

Finally, Remee asserts that Telco's claimed damages are limited to the cost of repair. This issue appears premature. The court will hear the evidence and determine the appropriate methodology for damage calculation when jury instructions are drafted.

It is the order of the court that the motion of defendant Remee Products Corp. for summary judgment (#63) is hereby GRANTED in part and DENIED in part. The motion is denied in all respects, with the exception that Telco is limited to a claim for breach of implied warranty of merchantability and the remedies appropriate to such a claim.

**ORDERED this 29th day of SEPTEMBER, 2014.**

**Dated this 29th day of September, 2014.**

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma